UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA P.,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. **C24-1182-BAT**<br><br>**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS** |

  Plaintiff appeals the ALJ's decision finding her not disabled. Plaintiff applied for disability insurance benefits in 2021. After conducting a hearing in May, 2023, the ALJ issued a decision finding Plaintiff last engaged in substantial gainful activity in November 2020; Plaintiff's major depression, anxiety disorder, post-traumatic stress disorder, insomnia, panic attacks, attention deficit hyperactivity disorder and neurogenic disorder due to cerebrovascular accident are severe impairments; Plaintiff retains the residual functional capacity (RFC) to perform a full range of work at all exertional levels subject to additional limitations; and Plaintiff cannot perform past relevant work but is not disabled because she can perform other jobs that exists in the national economy. Tr. 17-30.

  Plaintiff contends the Court should reverse the ALJ's decision and remand her case for an award of benefits or alternatively for further proceedings, on the grounds the ALJ erroneously

rejected her testimony and the opinions of treating providers Anne Clark, M.D., Rebecca Baxter, LPC, Nancy Crowley, LMHC, and Kelsey Sholund, M.D. Dkt. 9. The Commissioner contends the Court should affirm the ALJ's decision because the ALJ provided clear and convincing reasons to discount Plaintiff's testimony and the ALJ's assessment of the challenged medical opinions is supported by substantial evidence. Dkt.11.

. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**DISCUSSION**

Plaintiff contends the ALJ erroneously discounted her testimony and opinions of treating providers Anne Clark, M.D., Rebecca Baxter, LPC, Nancy Crowley, LMHC, and Kelsey Sholund, M.D. The Court finds this case must be remanded for further administrative proceedings because the ALJ harmfully discounted the medical opinions. The Court further finds this error also undermines the ALJ's assessment of Plaintiff's testimony. The Court first turns to the medical and other source opinions at issue.

The ALJ's decision notes and rejects the November 2021 assessment of treating doctor Anne Clark, MD that Plaintiff is markedly limited in daily activities; maintaining concentration, persistence or pace; would have at least three episodes of decompensation; would frequently fail to complete tasks; cannot function for a full week; will miss three days of work a month; and will be off-task at least 15 percent each workday. Tr. 27.

The ALJ rejected Dr. Clark's opinions, and the opinions of the other providers for the same reasons. The ALJ found each provider's opinion was unsupported by Plaintiff's medication

management records for anxiety, depression, and ADHD; her conservative treatment; her ability to care for her mother; her ability to move to Seattle: and her significant daily activities. *Id.*

The Commissioner contends the ALJ properly rejected the opinions of Dr. Clark, and the opinions of Dr. Sholund, Ms. Baxter and Mr. Crowley because Plaintiff there is "largely unremarkable treatment evidence"; her daily functioning is inconsistent with the medical opinions; and her treatment with medications and counseling is conservative and her medications effectively improved her symptoms. Substantial evidence does not support the ALJ's determination or the Commissioner's arguments.

Turning to whether the medical record supports the ALJ's determination to discount Dr. Clark's opinions, and the other provider opinions, the ALJ's decision first reviewed the medical record in assessing and discounting Plaintiff's testimony about the severity of her symptoms. In this review, the ALJ found "the medical record supports the claimant's assertion her impairments limit her ability to work." Tr. 25. Plaintiff impairments include her "major depression, generalized anxiety disorder, post-traumatic stress disorder, panic attacks, attention deficit hyperactivity disorder and neurocognitive disorder due to a cerebrovascular accident." Tr. 26. The ALJ found after her cerebrovascular accident, Plaintiff had been able to work from 2002 to 2017 but her work ability became "further compromised due to the totality of her impairments." *Id.*

The ALJ found the medical record showed Plaintiff reported she suffered from depression, anxiety, and memory problems "as she was caring for her mother with dementia," citing exhibit 4F. *Id.* As an initial matter, substantial evidence does not support the ALJ's finding that Plaintiff "cared" for her mother and Plaintiff is thus more functional she claims. In support, the ALJ cited exhibit 4F, which are treatment records generated between November 25, 2020 and

1  May 6, 2021. The note in that exhibit, dated January 12, 2021, states "patient continues to feel
2  poorly." Tr. 759. A note dated January 18, 2021, states "she continues to complain of weakness,
3  multiple depressive symptoms including difficulty sleeping, concentrating and increased stress as
4  her mother is elderly and is likely going to be placed in some type of assisted living facility." Tr.
5  757. Exhibit 4F thus does not show Plaintiff "cared" for her mother and therefore is not
6  substantial evidence supporting the ALJ's finding that Plaintiff, in fact, cared for her mother with
7  dementia despite alleging disabling mental health symptoms.

8        Additionally, Plaintiff's testimony at the hearing the ALJ conducted also does not show
9  Plaintiff "was taking care of her mother." Tr. 24. Plaintiff testified she stopped working in
10 November 2020 due to panic attacks, anxiety, depression, insomnia and attention and
11 concentration problems. Tr. 48. The ALJ asked Plaintiff "have you ever been responsible for
12 your mother's caregiving?" *Id.* Plaintiff stated: "I have not," *id.,* and that her mother "always had
13 somebody care for her. I – we moved there to help them. But she's always been – has providers,
14 you know, care for her at the house." Tr. 49. The Court concludes the ALJ's reliance on
15 Plaintiff's "care" for her mother is not supported by substantial evidence and thus not a valid
16 ground to discount the medical source opinion evidence or Plaintiff's testimony.

17       Turning back to the medical record, the ALJ's decision also noted it showed in 2020,
18 Plaintiff began medication management for her various impairments and treatment for decreased
19 energy and sleep disturbance and that she had poor memory and panic symptoms. The ALJ
20 observed that in August 2021, Rebecca Baxter, LPC noted Plaintiff exhibited difficulty
21 completing and understanding tasks associated with divorce and daily living and showed an
22 overall impairment in cognitive functioning including memory and ability to problem solve. Tr.
23 26.

1    The ALJ further noted the medical record showed in April 2020, Brian Douay, B.A. performed a neuropsychological evaluation, and found "overall" Plaintiff has mild neurocognitive disorder, post-traumatic stress disorder, panic disorder, major depression and anxiety disorder. *Id.* The ALJ indicated that despite these findings, Plaintiff was able to move to Seattle and establish new treatment providers and medication management. *Id.*

After providing this summary of the medical record, the ALJ indicated the record shows Plaintiff has "difficulty with focus and expression." However, the ALJ found Plaintiff can nonetheless perform work consistent with the RFC determination because Plaintiff can manage her treatment and medications"; her treatment is "conservative"; and cared for her mother and was able to move from one city to another. Tr. 26. These reasons to discount Plaintiff's testimony are the same reasons the ALJ gave to discount the opinions of Dr. Clark and the other providers, i.e., the provider's opinions were not supported by Plaintiff's medication management records for anxiety, depression, and ADHD; she received conservative treatment and cared for her mother; moved to Seattle and engaged in significant daily activities. Tr. 27.

The Court finds the medical evidence of record shows Plaintiff has significant not unremarkable mental health limitations; Plaintiff's treatment is not conservative, i.e., inconsistent with her claimed limitations; and medications helped but not to the extent the Commissioner claims or the ALJ found. The medical record shows Plaintiff has long suffered from cognitive difficulties originally from a cerebrovascular accident about 2002 which as the ALJ noted worsened in 2020 in conjunction with the symptoms she suffered from other severe mental disorders. Plaintiff's medical record does not show she received conservative treatment in the sense that her treatment is sparse, or inconsistent with her mental health symptoms. Rather the record shows Plaintiff has been examined and treated by a variety of medical doctors including

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 5

psychiatrists, has been prescribed a variety of medications, and has been in therapy and counseling with several mental health and licensed marriage and family counselors. Each of Plaintiff's medical providers note Plaintiff struggles with anxiety, depression, fatigue, sleep, and memory and concentration. Plaintiff's neuropsychological assessment by Dr. Alan Breen, Ph.D. showed global deficits. The medical record further shows while Plaintiff has regularly taken psychotropic medications that have helped some, she continues to struggle with serious depression, anxiety, and cognitive issues.

Thus, the medical record and Plaintiff's opinions and letters of Plaintiff's providers indicate Plaintiff's mental health condition is severe and Plaintiff is more limited than the ALJ found. As the ALJ specifically discounted the opinion evidence of Plaintiff's providers on the grounds the medical record does not support their opinions, the Court reviews the medical record.

As set forth below, a review of the medical record shows the ALJ's assessment the medical record undercuts the opinions of Plaintiff's providers or Plaintiff's testimony lack substantial evidence support. Plaintiff alleged disability starting on November 25, 2020. The record shows in December 2020, Dr. Brian Allenbrand, M.D. reported Plaintiff was struggling with "several symptoms" including depression that "has been worse this year" and she was on disability due to these symptoms, Tr. 564, and "she has been struggling with several symptoms recently including depression, memory problems, fatigue, brain fog." Tr. 568.

On December 9, 2020, Dr. Ann Clark reported Plaintiff started to struggle with depression and anxiety in the summer, Tr. 720, Plaintiff was recently diagnosed with ADHD and prescribed Adderall which was not helpful, Tr. 721, and her mood was mostly euthymic but her thought process appeared to be somewhat scattered, though her memory appeared to be intact.

*Id.* On January 18, 2021, Dr. Clark indicated Plaintiff was not improving with Viibryd and Plaintiff had taken bupropion which worked well in the past but had stopped working in the last year. Tr. 725.

On January 18, 2021, Francisco Chacon, MD noted Plaintiff continued to have multiple depressive symptoms including difficult sleeping, difficulty concentrating and increased stress from her mother's condition. Tr. 757. Subsequently, on January 20, 2021, Dr. Clark had Plaintiff on several psychotropic medications for ADHD, severe recurrent major depression, and generalized anxiety disorder. Tr. 732. Dr. Clark noted Plaintiff felt a slight improvement with medications but continued to struggle with managing daily activities; has memory and concentration problems and sleep are continuing issues. *Id.*

On February 16, 2021, Dr. Clark noted Plaintiff misread the instructions for her Bupropion prescription and thus incorrectly used it, feels better but was still struggling with focus and attention, and Adderall helped Plaintiff's concentration but worsened her anxiety. Tr. 728. On March 11, 2021, Dr. Clark indicated Bupropion provided Plaintiff minimal benefit though Plaintiff felt her anxiety was slightly less. The doctor noted Plaintiff "unfortunately continues to have difficulties with low energy, some sleep disturbance, panic attacks and poor memory." Tr. 730.

On March 31, 2021, Dr. Clark noted Plaintiff had "not had any improvement since last appointment with her anxiousness, depression, memory issues and sluggishness. Tr. 777. On May 18, 2021, Dr. Clark reported Plaintiff "is struggling with depression quite a bit. She feels like she's getting worse. It's difficult to think clearly and she feels quite hopeless." "She doesn't feel like the antidepressants are working at all. Tr. 779. The doctor noted "the patient's response to medication is poor." Tr. 780.

1    On May 3, 2021, Dr. Brian Allenbrand, MD, noted Plaintiff presented for follow-up on Hashimoto's disease and Plaintiff "has struggled with severe depression," that has worsened leaving her in a brain fog and affecting her short-term memory. Tr. 746.

On May 5, 2021, Dr. Clark reported Plaintiff was having "paranoia" and neuropsychological testing needed to be done. Tr. 781-782. On May 24, 2021, and July 13, 2021 Dr. Clark reported Plaintiff indicated she was having "sedation" with duloxetine. Tr. 792, and Tr. 793. Dr. Clark indicated in her July notes "patient continues to have some issues with depression and anxiety. Side effects are making it difficult for medication to be helpful." Tr. 794. On June 15, 2021, Dr. Clark noted Plaintiff continues to have significant issues with memory and forgetfulness; word finding is tough; and duloxetine seems to be helping a little bit with depression. Tr. 783.

About November 1, 2021, Dr. Clarke completed the medical opinion form which the ALJ discounted. On November 29, 2021, Dr. Clark reported Plaintiff is working with her therapist doing EMDR; is dealing with grief; has discontinued Adderall and her anxiety is somewhat better; continues to struggle with triggers and panic attacks; has disruptions during the day due to problems focusing and is constantly making lists to avoid forgetting. Tr. 830. Dr. Clark noted while duloxetine is somewhat helpful for Plaintiff's mood, she continues to have significant difficulties with panic and triggers for PTSD, and Plaintiff's ability to focus have worsened in the last year. Tr. 831.

On December 17, 2021, Dr. Clark noted Plaintiff missed an appointment due to confusion related to time-zones; "struggled throughout the whole appointment to stay focused on questions being asked," and had problems making payments due to difficulty with entering numbers and managing technology. Tr. 833.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 8

On January 17, 2022, Dr. Clark indicated Plaintiff was taking Adderall to help with cognitive tasks, but the drug increased her anxiety to the point of panic attacks. Tr. 860. The doctor noted Plaintiff struggled with disorganization and was unable to achieve tasks she needed to complete. *Id.* Dr. Clark also noted Duloxetine seemed to aggravate Plaintiff's cognitive fogging and Adderall which seemed to help with the fogging seemed to increase Plaintiff's anxiety. Tr. 861.

February 7, 2022, Dr. Clark noted Plaintiff struggled with managing daily activities. Tr. 862. The doctor reported Plaintiff's "thought processes were disconnected and she struggled with staying goal directed. It took frequent redirection to keep Plaintiff on target with the discussion. Her memory is poor, and she has difficulties remembering from one moment to the next where the conversation was going and what we are doing with her medications." Tr. Tr. 863. The doctor further noted "though the medications are somewhat helpful the patient continues to struggle with a lot of anxiety and panic attacks. Her memory is poor." *Id.*

On March 9, 2022, Dr. Clark noted "the patient is struggling quite a bit" and although she would like to get off of alprazolam, when she decreases her dose, her symptoms worsen. Tr. 864. The doctor also noted "mood was distressed and her affect congruent. She had difficulty maintaining goal directed content when talking and was easily distracted." "The patient finds her medications somewhat helpful but is struggling quite a bit with anxiety and emotional distress." Tr. 865. On June 6, 2022, Dr. Clark indicated Plaintiff is seeing a new psychiatrist (as Plaintiff had moved from the city in which Dr. Clark practiced). Tr. 866.

In November 2021, Plaintiff underwent a neuropsychological evaluation administered by Tammy Whiteley BS and Brian Douay BA. A report based upon this evaluation was authored by Alan Breen, Ph.D. Dr. Breen noted the evaluation "provides a clear portrait of a fairly global

pattern of difficulty," Tr. 844, with deficits noted in adaptive problem solving, memory, attention and concentration, language production and in aspects of reading and math." *Id*. Dr. Breen stated he suspected Plaintiff's "intellectual scores underestimate premorbid activity, and this would suggest that the deficits are probably greater than would otherwise be suggested by the relative difference in components of the neurocognitive battery and her intellectual performance." *Id.*

On December 2, 2022, Francisco Chacon, MD noted Plaintiff had multiple concerns but that her depression seems significantly improved. Tr. 761.

The ALJ also noted in the decision that in May 2023, Nancy Crowley, LHMC and Kelsey Sholund, MD. opined Plaintiff could not understand, remember, and carry out short simple instructions and cannot stay on task for two-hour segments and would be off-task and work slower in a significant manner. They also indicated Plaintiff would miss work more than once a well, cannot handle the stress of a workplace and cannot keep an ordinary routine without special supervision.

The Court finds the medical record cannot reasonably be interpreted to support the ALJ's finding that it shows Plaintiff has unremarkable mental health issues as the Commissioner contends; or the finding that Plaintiff's treatment is inconsistent with the medical opinions and that medications allow Plaintiff to perform work. The record and Plaintiff's providers indicate Plaintiff's symptoms are severe, and her medications help but have limited efficacy. At times it appears Plaintiff made mistakes following her prescriptions, misusing her Bupropion, for example.

The record also shows Plaintiff's treatment cannot be deemed to be conservative. No provider has opined Plaintiff's symptoms are disproportionate to her condition or the treatment she needs, or that she has minor condition that does not require consistent care. Rather it appears

Plaintiff's doctors have attempted to utilize a wide range of treatment modalities including a variety of medications; attempting to balance medications that appear to have positive effects as to some conditions but negative effects on others (i.e. Adderall helps with concentration but exacerbates anxiety); having neuropsychological testing performed to determine the impact of Plaintiff's stroke; and having Plaintiff engage in a variety of therapies and counseling sessions including CBT and EMDR. It appears Plaintiff is taking all the mediations that her providers have prescribed and performing all the therapy that has been recommended. The record also shows that while medications help, Plaintiff continues to struggle with numerous debilitating symptoms, and thus there is no support that her medications have managed her symptoms as the Commissioner contends and the ALJ's decision suggests.

The record further shows that no provider has indicated Plaintiff's symptoms are incongruous with her conditions or that more treatment is available to assist her. The Court finds the ALJ's conclusion Plaintiff's treatment is conservative, i.e., inconsistent with the severity of her condition is not supported by substantial evidence, and accordingly concludes the ALJ erred in rejecting the opinion of Dr. Clark and the other medical providers as inconsistent with the medical record.

The ALJ also rejected the opinions of Dr. Clark and the other medical sources on the grounds Plaintiff cared for her mother; moved to Seattle and engaged in significant daily activities. As noted above, substantial evidence does not support this finding. While Plaintiff was concerned about her mother's condition, her mother was cared for by "providers" who took care of her while she lived in her house, just before she was placed into a nursing home.

The ALJ's discussion regarding Plaintiff's daily activities first arose in connection with the ALJ's assessment of Plaintiff's testimony. The ALJ found Plaintiff's claim of disability was

inconsistent with her daily activities, i.e., she has no problem with personal care; can perform basic household tasks; can handle her finances; attends church weekly and prayer groups several times a month; goes to the gym a few times a week; attempted to work as a substitute teacher and babysitter; temporarily cared for her mother who has dementia; and moved from one city to another. Tr. 25.

Plaintiff argues the ALJ's reliance on her daily activities is erroneous because the ALJ did not explain what specific daily activity contradicts her claim of disability; the activities noted are minimal and thus an insufficient basis to reject her testimony; and the ALJ's finding that Plaintiff can perform certain activities fails to account for the evidence showing Plaintiff performs daily activities with difficulty. Dkt. 9 at 4-6.

The ALJ's decision does not provide an explanation as to why or how Plaintiff's daily activities contradicted anything Plaintiff specifically or the treating sources' opinions. Daily activities that do not contradict a claimant's testimony or constitute transferrable work skills are not grounds to discount a claimant's testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). That is, a claimant's daily activities do not automatically contradict a claimant's testimony or the opinions of a claimant's medical providers unless there is a discrepancy between the activity and the opinion.

Here, Dr. Clark indicated Plaintiff was markedly 'restricted" in her daily activities, and that Plaintiff had difficulty performing activities, not that Plaintiff cannot perform daily activities. Tr. 827. Plaintiff's activities thus do no contradict Dr. Clark's opinions. The opinions of Plaintiff's other providers also indicated Plaintiff has functional limitations that impair her ability to perform gainful work activity, and not that Plaintiff cannot perform activities of daily living. *See e.g.,* Tr. 1349-1354 (LMHC Crowley) and Tr. 1355-1360 (Dr. Sholund, MD). Both of

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 12

these providers in fact indicated Plaintiff can "adhere to standards of personal neatness and cleanliness" which indicates they believed Plaintiff could perform the normal minimal activities of daily living, i.e., self-care.

While some daily activities in some cases may be a basis to reject a medical opinion or the testimony of a claimant, Plaintiff's daily activities are minimal in nature, and an ALJ may not penalize claimants for attempting to live a normal life in the face of their limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

The Court notes the Commissioner argument the ALJ's reliance on Plaintiff's daily activities is a proper basis to discount a claimant's testimony and medical source opinions. While this may be the case if the facts of a specific case support the rationale, neither the ALJ nor the Commissioner provide any explanation as to why in this case Plaintiff's daily activities contradict her testimony or the providers' opinions. Neither the ALJ nor the Commissioner, for example, account for how Plaintiff performs her daily activities with great difficulty or how Dr. Clark indicated the same; that Plaintiff's teaching and babysitting are failed attempts to work; and that Plaintiff moved from one city to another to escape an abusive husband and not because she is an independent and highly mobile person. The Commissioner does not dispute the ALJ did not account for these facts. This implies Plaintiff had little to no difficulty with performing her daily activities, an implication that is not supported. The Court thus concludes the ALJ erred in rejecting the opinions of Plaintiff's providers, and Plaintiff's testimony as inconsistent with her daily activities.

In sum, the Court finds the ALJ's determination to discount both the opinions of Plaintiff's treating providers and Plaintiff's testimony is not supported by substantial evidence and the Commissioner's final decision must be reversed and remanded.

Plaintiff contends the Court should remand this case for an award of benefits. A case should be remanded for benefits only in rare circumstances, and only if further administrative proceedings would not be useful, and the record is free of conflicts, ambiguities or gaps, all factual issues have been resolved and it is clear a claimant would be entitled to benefits. *See Treichler v. Colvin* 775 F3d 1090, 1099 (9th Cir. 2014). The Court has found the ALJ misevaluated the opinions of the providers and the testimony of Plaintiff. The ALJ, not the Court, should reweigh the evidence and thus it is appropriate to remand the matter for further proceedings, not for benefits.

The Court accordingly **ORDERS**: the Commissioner's final decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the opinions of Anne Clark, M.D., Rebecca Baxter, LPC, Nancy Crowley, LMHC, and Kelsey Sholund, M.D; reassess Plaintiff's testimony; develop the record and redetermine RFC as needed; and proceed to the remaining steps of the disability determination process as appropriate.

DATED this 2nd day of December, 2024.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge